UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| HA XUAN THU, | Civil No. 09-2522 (JRT/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| PARK N' FLY, INC., *a Delaware corporation*, PARK N' FLY SERVICE CORPORATION, *a Delaware corporation*, and ROSA DEVELOPMENT COMPANY, *a limited partnership*, | |
| Defendants. | |

Richard T. Wylie, **ATTORNEY AT LAW**, 701 Fourth Avenue South, Suite 500, Minneapolis, MN 55415, for plaintiff.

Bradley J. Lindeman and Margaret R. Ryan, **MEAGHER & GEER, PLLP**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402; Jena S. Tarabula and Timothy R. Newton, **CONSTANGY, BROOKS & SMITH, LLC**, 230 Peachtree Street, Suite 2400, Atlanta, GA 30303, for defendants Park 'N Fly, Inc. and Park 'N Fly Service Corporation.

Ha Xuan Thu ("Ha") sued his former employer, Park 'N Fly Service Corporation[1] ("PNF") for retaliating against him in violation of the Minnesota Whistleblower Act

---

[1] Defendant Park 'N Fly, Inc. is the parent company of Park 'N Fly Service Corporation, the entity that employed Ha. The complaint and docket spell a portion of these defendants' names "Park N' Fly" but in referring to both entities the parties place the apostrophe before the "N," as will the Court. The Court will refer to them collectively as "the Park 'N Fly defendants."

("MWA") and for breach of contract. PNF and Park 'N Fly, Inc.[2] have moved for summary judgment. Because some of Ha's claims are time barred and because he has failed to show a material issue of factual dispute with regard to any of his claims, the Court grants the motion.

## BACKGROUND

In 1991, Ha was hired as a cashier by PNF, an off-airport parking company geared toward the business traveler. (Dep. of Thu Xuan Ha,[3] May 6, 2010, at 31, Docket No. 18, Ex. A; Decl. of Marcia Simning, July 20, 2010, at ¶ 3, Docket No. 18, Ex. C.) While Ha primarily worked as a cashier, he occasionally worked as a driver as well. (Ha Dep. at 33-34.) Drivers are responsible for transporting customers to and from the airport, while cashiers collect the parking fees from customers. (Ha Dep., Ex. 4.)

PNF's May 2006 Policies and Procedures Manual sets forth "a brief outline of [the company's] basic employee policies." (*Id.*, Ex. 6 at 1.) Ha received previous iterations of the manual and was aware that he could access updated versions. (*Id.* at 41-43.) The manual includes an explanation of PNF's disciplinary policy. Pursuant to the policy, PNF may discharge any employee immediately for any number of listed offenses, including "[i]nsubordination, including . . . failure or refusal to comply with an order or

---

[2] Park 'N Fly, Inc. asserts that it is entitled to summary judgment because it was not Ha's employer. Ha has offered no argument or evidence to the contrary, and he does not distinguish between the Park 'N Fly defendants in his complaint or opposition brief. Accordingly, the Court will grant summary judgment to Park 'N Fly, Inc. for the same reasons stated herein and for the additional reason that Park 'N Fly, Inc. was not Ha's employer.

[3] The plaintiff is identified in his deposition as Thu Xuan Ha.

Company procedure[,] . . . or displaying a disrespectful attitude towards Management." (*Id.*, Ex. 6 at 50-51.) In addition, the manual provides that an employee will be discharged upon receipt of three written warnings or reprimands within a one-year period. (*Id.* at 50.)

On July 13, 2006, PNF moved Ha from being a cashier with intermittent driving duties to a position as a full-time driver. (*Id.*, Ex. 10.) PNF's documentation characterized the change as a transfer, and its record reflects no change in his hourly pay. (*Id.*) Ha asserts that the new position was a demotion in retaliation for his reporting that PNF was charging its regular parking rate to customers promised a discount pursuant to PNF's Corporate Advantage Program ("CAP"). Corporate customers learn of CAP through flyers or marketing calls, submit an online application, and receive a CAP card by mail which they present to PNF's cashier. (Simning Decl. ¶ 7.) The cashier either enters the CAP code or runs the CAP card into a computerized system to trigger the discounted rate. (*Id.*) Ha reported that his cashier's computer was not applying the CAP rate at a company meeting in June 2006; a few days later, he sent a written report with several invoices explaining the issue to his manager, Daryl Anderstrom.[4] (Decl. of Ha Xuan Thu, Sept. 10, 2010, at ¶ 7, Docket No. 23; Ha Dep., Ex. 8.) Ha testified that he immediately refunded customers the difference between the CAP rate and the regular parking rate when they were incorrectly charged. (Ha Dep. at 67.)

---

[4] Marcia Simning replaced Anderstrom as Ha's manager in October 2006. (Dep. of Marcia Simning, May 7, 2010, at 5, Docket No. 18, Ex. B.)

According to PNF, Ha was transferred to the full-time driver position because of several complaints about his communication and efficiency as a cashier. (Decl. of Shelly Glenn, July 24, 2010, at ¶ 3, Docket No. 18, Ex. D; *see also* Ha Dep., Ex. 10.) Ha not only maintained his hourly pay rate as a full-time driver; he also retained his seniority, became eligible to earn tips, and subsequently received several base wage increases. (Glenn Decl. ¶ 4; Ha Dep., Ex. 10.)

On January 24, 2007, PNF's assistant manager issued a written warning to Ha for violating two work rules. (Ha Dep. Ex. 14.) Specifically, PNF accused Ha of backing up his van on a public highway and failing to wear his seat belt until a "drivecam" activated. (*Id.*) On June 1, 2007, Ha received a verbal warning – documented in a written Employee Warning Report – for excessive absences. (*Id.*) Marcia Simning, Ha's manager, issued an additional written warning on November 28, 2007, after Ha received an unsatisfactory review from a "mystery shop[per]." (*Id.*) Through its mystery shopper program, PNF hires a third-party company to send "mystery shoppers" to a PNF facility, where they pose as customers and evaluate the performance of PNF employees. (Simning Dep. at 51-55.) Among other infractions resulting in an unsatisfactory "mystery shop" evaluation, Ha did not greet or offer assistance to the customer and he failed to operate the shuttle in a safe manner. (Ha Dep. Ex. 14.) Ha received another written warning from Simning on November 29, 2007, for disobeying the dispatcher's order to pick up additional customers and for performing an administrative task – downloading information from his drivecam – while customers waited to be taken to the

airport. (*Id.*) Because Ha had received three written warnings in one year, Simning terminated Ha's employment. (Simning Decl. ¶ 10.)

Ha filed suit in state court on August 26, 2009, alleging retaliation for his complaints regarding the CAP program and breach of contract based on PNF's manual. (Compl., Docket No. 1, Ex. 1.) The Park 'N Fly defendants removed the case to this Court on diversity grounds and have now moved for summary judgment.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. MINNESOTA WHISTLEBLOWER ACT CLAIM

The MWA prohibits employers from taking an adverse employment action against an employee who, "in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer . . . ." Minn. Stat. § 181.932,

subd. 1(1). The Court must analyze Ha's MWA claim under the burden-shifting framework derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973):

> [T]he employee has the initial burden to establish a prima facie case, and the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason for its action, after which the employee may demonstrate that the employer's articulated reasons are pretextual. At all times the employee has the burden to prove by a preponderance of evidence that the employer's action was for an impermissible reason.

*Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001) (citations omitted). An employee establishes a prima facie case of MWA retaliation by showing "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Id.* (quotation marks omitted).

As an initial matter, Ha concedes that his claim that he was demoted from cashier to driver in retaliation for reporting PNF's failure to correctly apply the CAP discount is barred by the two-year statute of limitations governing MWA claims. *See Albert v. Larson*, No. A07-495, 2008 WL 1748150, at *3 (Minn. Ct. App. Apr. 15, 2008); *Larson v. New Richland Care Ctr.*, 538 N.W.2d 915, 920 (Minn. Ct. App. 1995), *abrogated on other grounds by Gordon v. Microsoft Corp.*, 645 N.W.2d 393 (Minn. 2002). PNF shifted Ha from the cashier position to driving full time on July 13, 2006, but Ha did not file suit until August 26, 2009, over three years later. Accordingly, Ha's claim that he was demoted in retaliation is time barred.

Turning to Ha's claim of retaliatory discharge, there is no doubt that Ha suffered an adverse employment action when he was fired, the second element of a prima facie retaliation case. PNF challenges Ha's ability to prove the first prima facie element, however, on several grounds. First, PNF argues that Ha's reporting the CAP issue did

not constitute statutorily protected activity because it was part of his job duties as a cashier. A report must be made "in good faith" to warrant protection under the MWA, Minn. Stat. § 181.932. As the Minnesota Supreme Court has explained,

> the [MWA] does not contain a job duties exception, . . . [but] an employee's job duties are []relevant in determining whether an employee has engaged in protected conduct. . . . [W]e have said that for a report to satisfy the "good faith" requirement, the report that is claimed to constitute whistle-blowing must be made for the purpose of exposing an illegality and not a vehicle, identified after the fact, to support a belated whistle-blowing claim. In determining good faith, we consider not only the content of the report, but also the employee's purpose in making the report. **The central question is whether the report was made for the purpose of blowing the whistle, i.e. to expose an illegality.** An examination of the employee's job duties could be helpful in answering this central question.

*Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 229-30 (Minn. 2010) (quotation marks and citations omitted) (emphasis added).

PNF argues that Ha's goal in making the reports was to fulfill his responsibilities without concern for the illegality of PNF's actions, but PNF has not produced evidence that cashiers were expected to identify and document issues relating to the computer system's application of discounts. Ha, however, has not cited record evidence showing that his purpose in reporting the issue was to expose an illegality, namely PNF's misleading advertisement that CAP participants would receive a discounted rate, as opposed to the purpose of simply alerting his employer to an unintentional computer error. Ha's testimony regarding his reports sheds little light on whether he intended to expose an illegality or merely sought to alert his employer to an inadvertent mistake. Ha stated that in reporting the overcharges to Daryl Anderstrom, he simply "sa[id], Park 'N Fly overcharged. Please tell [the] company [to] adjust the price." (Ha Dep. at 70.) Ha

did not hear anything further and did not know whether Anderstrom worked to fix the issue. (*Id.* at 70-72.)

The question of whether Ha believed the failure of PNF's computer system to apply a discounted rate to CAP customers was intentional or inadvertent also relates to another of PNF's arguments: that Ha's reports do not establish a violation of Minnesota's false advertising statute, Minn. Stat. § 325F.67, of which an essential element is intent. *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1491 (D. Minn. 1996). To demonstrate statutorily protected activity under the MWA, a plaintiff must identify "facts that, if proven, would constitute a violation of law . . . ." *Abraham v. Cnty. of Hennepin*, 639 N.W.2d 342, 355 (Minn. 2002). "[A] mere report of behavior that is problematic or even reprehensible, but not a violation of the law, is not protected conduct under the [MWA]." *Kratzer v. Welsh Co., LLC*, 771 N.W.2d 14, 22 (Minn. 2009).

The Minnesota Supreme Court has rejected the proposition "that the reported conduct need only **seem, in the eyes of the employee, to be unlawful**, even if that conduct is lawful." *Id.* (emphasis added). Rather,

> [t]he proper standard to apply when assessing the legal sufficiency of a claim under the [MWA] is to assume that the facts have occurred as reported and then determine . . . whether those facts constitute a violation of law . . . . If it later turns out that the facts are not as the employee reported them in good faith to be, the conduct is protected so long as the facts, if they had been true, would be a violation of the law.

*Id.* at 22-23 (quotation marks omitted). Ha testified that he reported a computer error, but there is no cited testimony – in support of either party's position – regarding whether he

believed that the error stemmed from PNF's intentionally false or misleading advertising.[5]

Even assuming Ha did engage in statutorily protected activity, he has not proffered sufficient evidence from which to establish causation between his reports and his termination. Marcia Simning was the sole decision-maker with regard to Ha's termination. Ha has proffered no evidence, however, that Simning or any of the individuals with whom she consulted in rendering her written warnings or termination decision knew of Ha's reports regarding the CAP issue. *See Alexander v. Wis. Dept. of Health & Family Servs.*, 263 F.3d 673, 688 (7th Cir. 2001) (plaintiff's inability to provide evidence that the actors involved in adverse employment action knew of his complaint before action was taken weakens inference of retaliation).[6]

In addition, Ha was fired approximately **a year and a half** after he reported the CAP issue. While "[t]he passage of time between events does not by itself foreclose a claim of retaliation[,]" *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1266 (8th Cir. 1997), a "gap in time between the protected activity and the adverse employment action [does] weaken[] an inference of retaliatory motive." *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 633 (8th Cir. 2005). *See, e.g., Anderson v. Graybar Elec. Co., Inc.*, No. 09-251,

---

[5] Ha points to evidence that PNF continued to overcharge CAP customers months after his reports. (Ha Dep., Ex. 8; Ha Decl. ¶ 4.) The issue, however, is **whether Ha believed that he was identifying PNF's intentionally misleading advertising** in reporting the computer issue.

[6] In construing the MWA, the Court may consider as guidance federal courts' interpretation of analogous federal retaliation law. *See Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999).

2010 WL 2545508, at *11 (D. Minn. June 18, 2010) (dearth of evidence that decision maker knew of statutorily protected conduct and a year and half between conduct and discharge establishes lack of causation in MWA retaliation claim); *Crosby v. State*, No. A08-1325, 2009 WL 1587080, at *6 (Minn. Ct. App. 2009) ("Without more, [a six month time gap between protected activity and adverse action] is too attenuated to establish a prima facie case [of retaliation].").

Moreover, engaging in statutorily protected conduct does not "insulate an employee from discipline for violating the employer's rules or disrupting the workplace." *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000) (quotation marks omitted). "[I]ntervening unprotected conduct [can] erode any causal connection" between protected conduct and termination. *Id.* (quotation marks omitted). In this case, Ha received multiple reprimands regarding violations of PNF rules following his reports and was fired after his third written warning within a year, pursuant to PNF policy.

Ha's disciplinary record undermines not only his prima facie case but also his ability to establish that PNF's proffered non-retaliatory reasons for his discharge are pretextual. *See Cokley*, 623 N.W.2d at 630 (once defendant articulates a legitimate non-discriminatory reason for the adverse action, burden shifts to plaintiff to establish that the reason is pretext for retaliation). Ha argues that PNF "took each succeeding opportunity that presented itself [following his reports] to either build a case against him or discipline him," and that the three warnings leading to his termination were "created out of whole cloth . . . ." (Mem. in Opp'n at 12, Docket No. 22); *see Powell v. State*, No. A06-1314, 2007 WL 1674667, at *4 (Minn. Ct. App. 2007) (a party may demonstrate pretext "by

showing that the employer's proffered explanation is unworthy of credence" (quotation marks omitted)).

With regard to the first warning in January 2007, **Ha admits that he backed up his van and did not wear his seat belt**; he argues, however, that the first violation was justified and his seat belt lapse was brief.  (Ha Decl. ¶ 3.)  Ha does not dispute that the second warning was based on the evaluation of a neutral third-party "mystery shopper," but contests the veracity and reasonableness of several of the observations.  (*Id.* ¶ 4.)  Likewise, Ha asserts that the accusations on which the third and final warning were based were not true.  (*Id.* ¶ 5.)

However, "[i]n determining whether a plaintiff has produced sufficient evidence of pretext, the key question is not whether the stated basis for termination actually occurred, but whether the defendant **believed** it to have occurred."  *Macias Soto v. Core-Mark Int'l, Inc.*, 521 F.3d 837, 842 (8th Cir. 2008) (emphasis added); *see also Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." (quotation marks omitted)); *Maynard v. Cowles Media Co.*, No. CX-99-567, 1999 WL 690200, at *4 (Minn. Ct. App. Sept. 7, 1999) (evidence that the employer's articulated explanation is "subjective, even incorrect," does not, by itself, establish pretext).  Ha's challenges to the **fairness** of the three warnings do not create a material factual dispute regarding whether the warnings were based in fact, and whether Simning, the sole decisionmaker, believed that they were justified.  As

discussed above, there is no record evidence that Simning even knew of Ha's reports, let alone evidence indicating that she did not believe the warnings were warranted. No reasonable factfinder could find Ha's challenges to the written warnings sufficient to show pretext for retaliation.[7]

The Court concludes that Ha has not established a prima facie case of retaliatory discharge, and he has failed to proffer sufficient evidence of pretext. Accordingly, the Court grants summary judgment to PNF on Ha's MWA claim.[8]

## III. BREACH OF CONTRACT CLAIM

Under Minnesota law, "an employee handbook may constitute terms of an employment contract if . . . the terms are definite in form . . . ." *Feges v. Perkins Rests., Inc.*, 483 N.W.2d 701, 707 (Minn. 1992); *see also Martens v. Minn. Min. & Mfg. Co.*, 616 N.W.2d 732, 742 (Minn. 2000) ("[W]e require language that is sufficiently definite for a court to discern with specificity what the provision requires of the employer so that if the employer's conduct in terminating the employee or making other decisions affecting the employment is challenged, it can be determined if there has been a breach."). In this case, Ha cites sections O and P of PNF's May 2006 Policies and

---

[7] Ha also asserts that causation may be inferred from his positive evaluations prior to his reports. However, while such evaluations "may show that [Ha] had performed competently in the past, . . . they do not render [his] more recent negative evaluations inherently untrustworthy." *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998).

[8] Ha's MWA claim focuses on his allegation of retaliatory discharge, but he also states, without elaborating, that he also challenges the written warnings and the denial of his bid to be a cashier in 2007. These claims fail because, for the reasons stated above, Ha cannot show a causal connection between these actions and his reports and he cannot show that PNF's reasons for its actions were unjustified.

Procedures Manual, which set forth the company's procedures for discipline and discharge. (Ha Dep., Ex. 6 at 50-51.) Section O sets forth "disciplinary measures [that] will be taken to enforce the work rules[,]" including the discharge of an employee after three written warnings within a one-year period. (*Id.* at 50.) Section P specifies certain infractions for which PNF "may" discharge an employee immediately. (*Id.*)

Neither section is sufficiently definite to create a unilateral employment contract. Ha relies upon *Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876 (Minn. 1986), in which the Minnesota Supreme Court found binding contractual language in an employee handbook provision stating, in part, "no employee will be discharged without previous warning and a period in which to bring performance up to a satisfactory level." *Id.* at 881 n.1. Unlike the provision in *Lewis*, however, sections O and P "do[] not qualify [PNF]'s right to discharge an employee nor do[] [they] evidence an intent to restrict that right." *Ward v. Employee Dev. Corp.*, 516 N.W.2d 198, 203 (Minn. Ct. App. 1994) (rejecting breach of contract claim based on provisions in employee handbook).

The only relevant term that might be construed as "mandatory" in section O states than PNF "will" discharge an employee who receives three written warnings in one year. (Ha Dep., Ex. 6 at 50.) That is precisely what happened in Ha's case. Ha's argument that the three warnings were unjustified would not support a breach of contract claim even if the manual did create a contract. At most, the sections of the manual cited by Ha require PNF to fire employees in certain circumstances, but they do not **preclude** the

company from firing its employees in other circumstances; to the contrary, section P offers a non-exclusive list of infractions which "may" warrant termination. (*Id.*)

The Court therefore grants summary judgment to PNF on Ha's breach of contract claim.

## IV. ORDER TO SHOW CAUSE

The Park 'N Fly defendants allege that Rosa Development Company ("Rosa"), a named defendant in this case, was never served and, in any event, did not employ Ha. Ha does not dispute these contentions, and he does not distinguish between the three named defendants in his complaint. (Docket No. 1, Ex. 1.) Only the Park 'N Fly defendants, however, moved for summary judgment. The Court therefore orders Ha to show cause on or before thirty days from the date of this Order why the Court should not dismiss Rosa and enter judgment in this case accordingly.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Park 'N Fly, Inc. and Park 'N Fly Service Corporation's Motion for Summary Judgment [Docket No. 15] is **GRANTED**.

2. Ha show cause on or before thirty days from the date of this Order why the Court should not dismiss Rosa and enter judgment in this case.

DATED: January 31, 2011      _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.      JOHN R. TUNHEIM
                                                                                    United States District Judge